**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Haifa Mahdi, | No. CV-14-02265-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Haifa Mahdi appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal. (Doc. 13).

**I.    Background**

    **A.    Procedural Background**

On June 10, 2011, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, alleging a disability onset date of January 1, 2009. (R. 155). The Commissioner denied benefits on September 21, 2011, (R. 58), and Plaintiff requested reconsideration, (R. 94). Plaintiff was again denied on April 6, 2012, (R. 73, 89), and she appealed.

On April 4, 2013, Administrative Law Judge ("ALJ") Patricia A. Bucci held a hearing on Plaintiff's claim. (R 31-57). At the hearing, Plaintiff amended her disability onset date to June 10, 2011. (R. 14, 182). Following the ALJ's unfavorable decision, (R. 14-26), Plaintiff appealed to the Appeals Council. After the Appeals Council denied

Plaintiff's request for review, (R. 1), Plaintiff filed an appeal with this Court. (Docs. 1, 13). Plaintiff argues that (1) the ALJ improperly rejected the opinions of examining physicians and (2) the ALJ failed to properly apply the Medical-Vocational Guidelines in finding Plaintiff to be not disabled. (Doc. 13 at 4).

### B. Medical Background

The Court will briefly summarize Plaintiff's medical history, which is recounted in the administrative record. Plaintiff's medical history is not extensive, and begins in 2009, when an x-ray of her lumbar spine revealed first-degree degenerative spondylolisthesis and a narrowed L5-S1 disc space. (R. 241). Beginning in May 2011, Plaintiff was treated by 21st Century Family Medicine until February 2012. (R. 328-36). These treatment notes, which are largely illegible, appear to document lower-back pain, insomnia, and blurring vision. (*Id.*) In May 2011, a radiologic exam of Plaintiff's spine revealed mild thoracic spondylitic disease, L4-L5 degenerative subluxation, and a transitional segment with partial sacralization of L5. (R. 245). Dr. Araghi, one of Plaintiff's treating physicians, diagnosed Plaintiff with grade I spondylolisthesis of L4 on L5 with a partially sacralized L5-S1 and "[l]ow back pain with bilateral lower extremity radicular symptoms." (R. 289, 302).

Plaintiff briefly treated with STI Physical Therapy & Rehabilitation, where she was prescribed treatment including stretching and icing. (R. 257). Plaintiff never returned for treatment. Plaintiff also treated for one appointment with Dr. Hennenhoefer, at which time Plaintiff reported 10/10 pain and taking tramadol and Vicodin to help with the pain. (R. 337). Plaintiff's most recent treatment notes reflect that Plaintiff decided against local spinal injections in favor of pain medications, (R. 342), and is experiencing lower back and hip pain, (R. 344, 346, 348). Imaging of Plaintiff's left hip revealed no fracture or degenerative change. (R. 354). Plaintiff has been diagnosed with hypertension, hyperlipidemia, diabetes, atherosclerosis, COPD, and backache. (R. 342).

II. **Disability**

　　A. **Definition of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

　　B. **Five-Step Evaluation Process**

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple

instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work.

*Reddick*, 157 F.3d at 721.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

### C. The ALJ's Evaluation Under the Five-Step Process

The ALJ applied the five-step sequential evaluation process using Plaintiff's amended alleged onset date of June 10, 2011. (R. 14). The ALJ found in step one of the sequential evaluation process that Plaintiff has not engaged in substantial gainful activity since her amended alleged onset date of June 10, 2011. (R. 16). The ALJ then found Plaintiff to have the following severe impairments: lumbar degenerative disc disease and obesity. (R. 16). Under step three, the ALJ noted that none of these impairments met or medically equaled one of the listed impairments that would result in a finding of disability. (R. 19). The ALJ then determined that Plaintiff's residual functional capacity ("RFC") was the ability to "perform medium work as defined in 20 CFR 416.967(c) except the claimant is able to frequently balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. The claimant should never be required to climb ladders, ropes or scaffolds. The claimant should also avoid concentrated exposure to non-weather related extreme cold, wet conditions, excessive vibration, dangerous with moving mechanical parts, and unprotected that are high, exposed." (R. 20) (errors in original). Under step four, the ALJ determined that Plaintiff has no past relevant work. (R. 24). Under step five, the ALJ then considered Plaintiff's age, education, work experience, and residual functional capacity to determine that Plaintiff could perform a number of jobs in the national economy. (R. 24). The ALJ concluded that Plaintiff was not disabled. (R. 25).

### D. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is

> relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III. The Opinions of Examining Physicians

### A. Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between an examining physician's medical opinion and other evidence in the claimant's record. An examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. 20 C.F.R. § 404.1527(c)(1); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ may reject the opinion of an examining physician, "if contradicted by another [physician]," only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31; *see also Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Substantial evidence that contradicts an examining physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Id.*

- 6 -

**B.** **Discussion**

Plaintiff argues the ALJ erred in rejecting the opinions of examining state agency physicians Dr. Monte Jones and Dr. Jeffrey Levison in favor of the opinion of nonexamining state agency physicians Dr. Jean Goerss and Dr. Mikhail Bargan. (Doc. 13 at 4-5).

Dr. Jones was a state agency physician who examined Plaintiff on September 8, 2011. (R. 266). Dr. Jones recorded Plaintiff's primary complaints as left wrist pain and pain on the bottom of her feet. (R. 266). Dr. Jones noted back pain and diabetes among Plaintiff's additional complaints. (R. 266). Plaintiff denied using tobacco to Dr. Jones. (R. 266). Dr. Jones also recorded that Plaintiff had lost all vision in her left eye. (R. 267). At the examination, Plaintiff had a normal gait, normal posture, shook hands with "normal tension, "made positional changes without difficulty between sitting and standing," sat in a chair, "was able to get up from an armless chair without difficulty," "got up and down from the exam table without human assistance," and "was able to lie down in the supine position on the exam table and recover without human assistance." (R. 267). Plaintiff was also able to tandem walk, walk on her heels and toes, to squat and recover without assistance, and to kneel and recover without assistance. (R. 267). Plaintiff's only mobility limitation was her fear to "try to hop on both feet." (R. 267).

Dr. Jones noted that Plaintiff's range of motion was within normal limits for her cervical spine, thoracic spine, lumbar spine, and pelvis. (R. 268). Plaintiff had full range of motion for her shoulder, elbow, wrist, hips, knees, and ankles with 5/5 muscle strength in all areas. (R. 268). Although Plaintiff complained of back pain, Dr. Jones noted no objective physical problems with her joints and normal reflexes. (R. 268). Yet, despite these findings, Dr. Jones rested his functional capacity assessment of Plaintiff on his diagnosis of degenerative disc disease in her lumbar spine and mild spondylitic disease in the thoracic spine. (R. 269-70). Dr. Jones apparently did so based on Plaintiff's subjective reports of whole body pain. (R. 269). Dr. Jones assessed Plaintiff as only being able to perform light work. (R. 269-71).

Dr. Jones' functional capacity assessment is inconsistent with his own findings, including his findings showing a complete absence of objective limitations. The ALJ did not err in discounting Dr. Jones' functional capacity assessment because although Dr. Jones' objective findings are consistent with the record, his assessment that Plaintiff is capable of only light work is inconsistent with the balance of Plaintiff's record evidence. The ALJ gave specific and legitimate reasons for discounting his opinion. For example, the ALJ noted that Plaintiff's reports of pain are inconsistent with her diagnosis of only grade 1 spondylolisthesis and her engaging in only conservative treatment. (R. 21, 257).

Plaintiff also twice failed to complete a course of physical therapy, attending only one appointment at STI Physical Therapy & Rehabilitation. (R. 21, 256). Plaintiff switched to the Core Institute, but after six therapy sessions Plaintiff stopped attending and was unreachable by the Core Institute staff. (R. 21, 304). Plaintiff also saw Dr. Hennenhoefer for a single visit, at which she complained of 10/10 pain but found physical therapy unhelpful and she stated she had not undergone injections. (R. 22, 337). Instead, Plaintiff took tramadol and Vicodin. (R. 337). Plaintiff admitted tobacco use to Dr. Hennenhoefer, which contradicts her denial to Dr. Jones and undermines Plaintiff's credibility. (R. 339). Dr. Hennenhoefer found Plaintiff slow to rise from a chair, and noted mild to moderate restrictions in Plaintiff's range of motion. (R. 339). Plaintiff never followed up with Dr. Hennenhoefer. (R. 22).

In addition to Plaintiff's inconsistent statements regarding her tobacco use, the ALJ found Plaintiff's credibility further compromised in that she complained of only being able to sit for twenty minutes at a time but sat through the forty-five minute ALJ hearing. (R. 22-23). More significantly, the ALJ noted that although Plaintiff had told Dr. Jones that she had lost her vision in her left eye, her left eye was tested at 20/15 vision by Dr. Levison. (R. 316). In fact, Dr. Levison reported that Plaintiff had told another doctor that she could not see out of her *right* eye. (R. 316). Thus, to the extent this evidence severely compromises Plaintiff's credibility, the ALJ appropriately relied on it to discount Dr. Jones' functional capacity assessment because that assessment was based on

Plaintiff's subjective reports.

The ALJ also found Dr. Levison's findings to be inconsistent with his functional capacity assessment of Plaintiff. Dr. Levison examined Plaintiff on March 28, 2012, and also reviewed her past medical records. (R. 315). Dr. Levison noted from Plaintiff's records that she appeared to have age-appropriate narrowing of the central canal in her spine, as well as grade 1 spondylolisthesis. (R. 315). Dr. Levison noted that Plaintiff was "a very histrionic claimant" who displayed extremely poor effort during the exam, sighing frequently and making minimal effort. (R. 316). Dr. Levison found numerous Waddell's signs (indicating a psychological component to chronic low back pain), and a "stark contrast" between direct and indirect observational findings. (R. 316).

Dr. Levison found Plaintiff's gait, station, and coordination to be normal. (R. 316). Plaintiff refused during the exam to hop, squat, heel-toe stand, or use a tandem gait. (R. 316). Dr. Levison noted during palpation of Plaintiff's spine that Plaintiff's tenderness was out of proportion to the actual intensity of palpation. (R. 316). Plaintiff also had a full range of motion of her cervical and thoracic spine and could sit on the examination table without difficulty, although Plaintiff would not bend forward "even 1 degree on formal testing." (R. 316). Plaintiff had "about 0-1 strength" in her upper and lower extremities during formal testing, which Dr. Levison believed to be consistent with deception because Plaintiff was able to walk and maneuver. (R. 317). Dr. Levison also noted "give-way weakness," which he believed was a further sign of deception. Overall, Dr. Levison concluded that he believed "there is marked malingering and deception on the claimant's behalf." (R. 317). Nevertheless, Dr. Levison assessed Plaintiff's functional capacity as only light lifting. (R. 318).

The ALJ specifically discounted Dr. Levison's functional capacity assessment as inconsistent with Dr. Levison's own findings as well as other substantial record evidence. (R. 23-24). For the reasons already discussed with respect to Dr. Jones, the ALJ pointed to specific evidence in the record that undermined Plaintiff's credibility and objectively contradicted Dr. Levison's capacity assessment.

Finally, the ALJ also pointed to the opinions of nonexamining physicians Dr. Goerss and Dr. Bargan as evidence contradicting Dr. Levison's and Dr. Jones' functional capacity assessments. (R. 23). Dr. Goerss reviewed Plaintiff's records and found Plaintiff to be not credible because her reported symptoms were inconsistent with the objective findings. (R. 84). Similarly, Dr. Bargan found Plaintiff's normal range of motion and strength in her extremities supported a functional capacity assessment of medium work. (R. 66-67).

In sum, the ALJ offered specific and legitimate reasons for discounting the functional capacity assessments of Drs. Jones and Levison. The ALJ pointed out that these capacity assessments were inconsistent with those doctors' own treatment notes, the objective evidence in the record, and the findings of the nonexamining physicians. The ALJ also stated that Plaintiff's impaired credibility negatively impacted the reliability of Dr. Jones and Dr. Levison's capacity assessments because those assessments were based on Plaintiff's subjective symptoms. These were specific and legitimate reasons for discounting these capacity assessments, and the ALJ did not err in doing so.[1]

## IV. Medical-Vocational Guidelines

Plaintiff's second argument is that the ALJ did not properly consider "20 CFR 404.1599 Subpart P, Appendix II at 202.09" in failing to find Plaintiff to be disabled. (Doc. 13 at 4). The Court presumes, as Defendant points out, that Plaintiff intended to cite to the Medical-Vocational Guidelines, 20 C.F.R. 404, Subpart P, Appendix 2. (Doc. 16 at 10 n.1). Plaintiff argued in her opening brief that under the Medical-Vocational Guidelines, a person over 50 years of age who has an inability to communicate in English and has no skills is considered disabled. (Doc. 13 at 4).

In applying the Medical-Vocational Guidelines, the ALJ noted that "[i]f the claimant had the residual functional capacity to perform the full range of medium work, a

---

[1] Plaintiff argues the ALJ erred in discounting the capacity assessments of Dr. Jones and Dr. Levison because, according to Plaintiff, even a healthy 60-year-old woman would have difficulty lifting fifty pounds occasionally. (Doc. 13 at 5). But a functional capacity assessment does not consider age, education, or work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 148 (1987).

- 10 -

finding of 'not disabled' would be directed by Medical-Vocational Rule ("Rule") 203.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (R. 25). At the ALJ hearing, a vocational expert testified that given Plaintiff's age, education, and limited English skills, there were jobs available in the national economy that required medium exertion and only the lowest level of language skills. (R. 25). The ALJ concluded that based on this testimony, Plaintiff was capable of making a "successful adjustment to other work that exists in significant numbers in the national economy" and was thus not disabled. (R. 25). Plaintiff does not challenge the vocational expert's testimony on appeal.

Plaintiff's argument fails because Medical-Vocational Rule 202.09, to which Plaintiff cites, applies only to claimants with a residual functional capacity for light work. The ALJ found Plaintiff to be capable of medium work. However, Plaintiff argues in her reply brief that because she is now over 60 years of age, Medical-Vocational Rules 203.01 and 203.02 require a finding of disability even if Plaintiff is capable of medium work. (Doc. 17 at 2). Rules 203.01 and 203.02 apply when a claimant is over 60 years old and has a "limited" or "marginal" education. 20 C.F.R. pt. 404, subpt. P, app. 2. The ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (R. 24); *see also* 20 C.F.R. § 414.964(b)(4). Accordingly, the applicable Medical-Vocational Rule is 203.06, which applies when the claimant is over 60, is a high school graduate, and has no previous work experience. Rule 203.06 directs a conclusion of "not disabled." The ALJ did not err in applying the Medical-Vocational Guidelines

**V.     Conclusion**

The ALJ did not err in finding Plaintiff to be not disabled.

/

/

/

/

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 22nd day of September, 2015.

James A. Teilborg
Senior United States District Judge